# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PAUL WILLIAM THATCHER, JR.,        Case No. 1:13-cv-164
      Plaintiff,

                                      Barrett, J.
      vs.                           Litkovitz, M.J.

TIM BRUNSMAN, et al.,           **REPORT AND**
      Defendants.             **RECOMMENDATION**

Plaintiff, an inmate at the Lebanon Correctional Institution (LeCI) in Lebanon, Ohio, brings this civil rights action against the former Warden of LeCI, the Director of the Ohio Department of Rehabilitation and Correction (ODRC), and several other LeCI prison officials and correctional officers. By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see*

*also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress has also authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §1915 (e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-

2

pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff, who is proceeding *pro se*, brings this civil rights action under 42 U.S.C. § 1983 against sixteen defendants: ODRC Director Gary C. Mohr; Tim Brunsman, LeCI's former Warden; Mrs. Ellen M. Meyers, LeCI's Assistant Warden; LeCI Deputy Wardens, Mr. Harris and Mr. Swisher; LeCI Chief Medical Officers, Dr. O. Cataldi and Dr. T. Heyd; Mr. Buckhalter, Chairman of the Rules Infraction Board (RIB) at LeCI; RIB "Bailiff," Mr. Koontz; Ms. Leanford, a correctional officer and RIB hearing officer; and LeCI correctional officers, Mr. Dunn, Mr. C. Barney, Mr. Shuttleworth, Mr. D. Johnson, Mr. Sherman, and Mr. Couch. (Doc. 1, Complaint, p. 4).

The complaint is rambling and contains numerous allegations regarding plaintiff's treatment at LeCI after plaintiff was allegedly assaulted in his prison cell by another inmate on April 15, 2011. Plaintiff alleges that on that date, he was assaulted by "some light skinned black guy . . . for no reason at all." (*Id.*, p. 5). Plaintiff avers that he did not "know this guy from Adam" and that defendants Johnson and Shuttleworth told him at the time that he "wasn't going to the hole" and to "[j]ust go to medical and get checked out." (*Id.*). Plaintiff did go to the

3

medical unit as the officers had instructed and upon his return to the "A-Block," he went to Shuttleworth's office to sign a Protective Custody Waiver form. Defendant Sherman told plaintiff then that he would look at the "A-Block video to see what happened." (*Id.*).

Plaintiff alleges that after he returned to his cell, a correctional officer came in and said that defendant Couch wanted to see him. (*Id.*) Plaintiff avers: "Lt. Couch then placed me in the hole . . . because Lt. Couch didn't want to do the proper paper work." (*Id.*). Plaintiff went back to "A-Block" to pack up his "stuff" and observed defendant Barney "writing the conduct reports on April 15, 2011." (*Id.*). Plaintiff claims that upon reaching the property room, he "had to send all of [his] commissary home due to roaches and rodents, because these folk[] wouldn't keep it in the property room like they are suppose[d] to do." (*Id.*).

Plaintiff next claims that he had "trouble eating [his] lunch" that day. (*Id.*, p. 6). He reported the problem to a correctional officer and nurse, who told him to fill out a "medical request form." (*Id.*). Plaintiff reported the problem again to a "second shift c/o" who came by his cell later in the afternoon. The correctional officer sent plaintiff "back over to medical to get checked out." (*Id.*). Defendant Cataldi examined plaintiff and "admitted [him] due to injuries to the right side of [his] head and face." (*Id.*). Cataldi also ordered x-rays and prescribed naproxen for pain relief. (*Id.*). Plaintiff states that the correctional officer who "did [the] pack up" of items sent to the medical unit did not pack plaintiff's "wash rag and towel." (*Id.*). Plaintiff claims: "Therefore I was unable to take a shower since I was locked up in the hole on April 15, 2011 as well as in medical on this same day." (*Id.*).

Plaintiff alleges that on April 17, 2011, he was "released from medical" to another prison cell, where he "continued to ask every c/o on first and second shift to please call R-Block for my

4

wash rag and towel, so I can take a shower." (*Id.*). Plaintiff was told to "catch one of the white

shirts when they make their rounds." (*Id.*). Because plaintiff never saw anyone to help him, he

went on a hunger strike at 4:00 p.m. on April 22, 2011. (*Id.*). Plaintiff claims that "the c/o's

didn't start keeping track of [his hunger strike] until April 23, 2011 or April 24," which "is cruel,"

constitutes a "health hazard," and violates the prison's administrative rules. (*Id.*, pp. 6-7).

Plaintiff alleges that on April 26, 2011, a nurse finally asked him "what it would take for

me to start eating and taking my medicine and I said a wash rag and towel so I can take a

shower." (*Id.*). The nurse contacted defendant Leanford, who provided plaintiff with a wash rag

and towel after meeting with him. (*Id.*). Plaintiff then ended his hunger strike and began "taking

the last few days of [his] medicine." (*Id.*). Plaintiff states that he "finally got a shower after 11 or

12 days in the hole without a shower." (*Id.*).

Plaintiff alleges that on May 2, 2011, defendant Leanford escorted him and a few other

inmates to "J-Block" to hear their "conduct reports" and then returned them all back to their cells.

(*Id.*). On May 3, 2011, defendant Koontz took plaintiff and few other inmates to the RIB, where

defendant Buckhalter asked plaintiff if he still wanted to call a witness. (*Id.*, pp. 7-8). The

complaint contains the following allegations about plaintiff's response to Buckhalter, as well as

the RIB and appeal proceedings that ensued:

> I said yes, and you can look at the video for A-block, they told me my witness took
> the day off so I was took back to my cell. . . . Then RIB called C-Block to get me
> ready to go back to RIB so c/o Koontz came back to get me and a few other
> inmates. Anyway the RIB (3) member panel said they looked at the A-Block
> video, so they heard my conduct report and found me guilty. So I then appealed it
> to Mrs. Ellen M. Meyers, the Asst Warden. She affirmed the decision of the RIB
> so I then appealed her decision to Mr. Gary C. Mohr the Director of ODRC, who
> refused to do anything on my appeal to him, stating he was unable to look at
> certain cases due to [administrative rules]. But he is able to revise the

5

[administrative rules]. Anyhow I was released from the hole on May 3, 2011 . . . and I saw Mr. D. Johnson case manager and Sgt. Shuttleworth and they both told me that they went to the Warden Tim Brunsman, Deputy Warden Harris, Deputy Warden Special Services Swisher and Major Dunn, trying to get me out of the hole because I didn't do anything wrong, and they all said let RIB decide his fate.

****

On May 11, 2011 Lt. Buckhalter from RIB called A-Block for me to come back to RIB . . . to ask me a question about the conduct report that he and (2) other staff member[s] heard on May 3, 2011.

(*Id.*, pp. 8-9).

Plaintiff further claims that he saw defendant Heyd on September 2, 2011. (*Id.*, p. 9). Heyd ordered an x-ray of plaintiff's head and face in order to determine if plaintiff had any "head trauma." (*Id.*). Heyd also prescribed 200 milligrams of Tagertol for plaintiff to take until February 5, 2012 "due to headaches and etc." (*Id.*). Plaintiff states: "But Tagertol is a seizure med[], and I don't have seizures." (*Id.*).

Finally, plaintiff alleges that all of the defendants knew he had a "local separation from Inmate Gurty," which "came about in 1991 or 1992 when this Inmate Gurty raped [him]" at another Ohio prison. (*Id.*, pp. 8-9). Plaintiff avers: "But how can the[re] be a local separation on two inmates when we have to share the same hallways, medical & programs and etc. We both was in the 40 and over Recreation Program." (*Id.*).

Plaintiff requests as relief "$80,000 from each defendant as well as disciplinary steps to be taken against each defendant. A total of $10, million with a[n] unconditional parole." (*Id.*, p. 9).

Upon review of all of the complaint's allegations, the undersigned concludes that plaintiff has failed to state a claim upon which relief may be granted by this Court. In order to state a colorable claim under 42 U.S.C. § 1983 against the state-actor defendants, the plaintiff must

allege facts showing that the defendants violated "a right secured by the Constitution [or] laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff's allegations, which can be grouped into four categories or causes of action, are insufficient to withstand dismissal at the screening stage.

### 1. Prison Disciplinary/Administrative Proceedings

First, it appears from the face of the complaint that plaintiff is challenging disciplinary and/or administrative actions taken against him by some of the state defendants after the April 15, 2011 inmate assault incident. Specifically, it appears that plaintiff is bringing claims against the following defendants: Johnson and Shuttleworth, whose involvement in the matter consisted of telling plaintiff immediately after the assault that he would not be "going to the hole" and later serving as advocates for plaintiff by arguing to their supervisors that plaintiff should be released from the "hole" because he did not do "anything wrong"; Sherman, whose alleged participation in the matter merely involved viewing the video of the incident "to see what happened"; Barney, who allegedly was responsible for writing the conduct reports stemming from the assault incident; Couch, who allegedly was responsible for plaintiff's placement in the "hole" after plaintiff signed a Protective Custody Waiver form simply because Couch "did not want to do the proper paper work"; Leanford and Koontz, whose alleged involvement consisted only of escorting plaintiff to and from the RIB proceedings; Buckhalter, who participated in the RIB proceeding that resulted in a finding of guilt on the conduct report; Meyers and Mohr for their actions on appeal from the RIB decision; and Brunsman, Harris, Swisher, and Dunn, whose alleged involvement in the matter consisted of telling Johnson and Shuttleworth to "let RIB decide his fate" when the two correctional officers argued for plaintiff's release from the "hole."

7

As an initial matter, plaintiff has alleged no facts even remotely suggesting that defendants Johnson, Shuttleworth, Sherman, Leanford and Koontz actually acted against him in the challenged prison proceedings. Moreover, the mere allegation that plaintiff observed defendant Barney writing conduct reports on the assault incident does not give rise to the inference that Barney engaged in any impropriety in the administrative and/or disciplinary matter. Indeed, even if plaintiff had alleged that Barney had falsely accused him of misconduct, erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein); *see also Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing.").

Finally, plaintiff's allegations regarding his placement in the "hole" by defendant Couch, as well as the conduct of defendants Buckhalter, Meyers, Mohr, Brunsman, Harris, Swisher and Dunn in the RIB proceedings that followed, do not give rise to a colorable federal claim because plaintiff has not alleged any facts to suggest that the defendants' actions deprived him of a constitutionally protected liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). Plaintiff has not alleged that

the challenged RIB proceeding resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Plaintiff has alleged that, with the exception of a couple of days spent in the prison's medical unit, he was confined in the "hole" from April 15 to May 3, 2011. However, such confinement does not rise to the level of an atypical and significant hardship and thus does not trigger due process concerns. *Cf. Sandin*, 515 U.S. at 486 (holding that the prisoner's placement for 30 days in disciplinary segregation did not implicate constitutional concerns); *Smith v. Corrections Corp. of America*, 5 F. App'x 443, 444 (6th Cir. 2001) (same); *see also Jones*, 155 F.3d at 812 (holding that an inmate's administrative segregation for two and a half years while his participation in a prison riot was being investigated did not amount to an atypical and significant hardship); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at \*3 (6th Cir. Aug. 11, 1999) (30 days in Security Control, 14 days in Disciplinary Control and six to eight months in Administrative Control did not constitute an "atypical hardship" under *Sandin*). *But cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, his complaint against the various defendants based on their actions in the prison administrative and/or disciplinary proceedings fails to state a cognizable federal claim.

9

## 2. Medical Treatment

Second, it appears from the face of the complaint that plaintiff is challenging the medical care he received from defendants Cataldi and Heyd at LeCI. The claim against Dr. Cataldi is based on medical treatment provided to plaintiff on April 15, 2011 after the assault incident. (*See* Doc. 1, Complaint, p. 6). The claim against Dr. Heyd is based on medical treatment provided to plaintiff over four months later on September 2, 2011. (*See id.*, p. 9).

In order to state a colorable claim under § 1983 against the two medical officers, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In cases where the complaint alleges a complete denial of medical care, "a prisoner states a proper cause of action when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Estelle*, 429 U.S. at 106; *Byrd v. Wilson*, 701 F.2d 592, 594-95 (6th Cir. 1983). In contrast, in cases where the "prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake*, 537 F.2d at 860 n.5). In such cases, the medical treatment must be so "woefully inadequate as to amount to no treatment at all" in order to give rise to a constitutional claim subject to consideration in a § 1983 action. *Id.*

"[N]ot every showing of inadequate medical treatment will establish the existence of a constitutional violation." *Byrd,* 701 F.2d at 594 (citing *Estelle*, 429 U.S. at 104). Allegations of

10

negligence in diagnosing or treating medical conditions "do not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *see also Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 895-96 (6th Cir. 2004) ("Deliberate indifference 'entails something more than mere negligence.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). To state an actionable § 1983 claim of deliberate indifference by prison officials in the provision of medical care, the complaint must allege facts showing (1) the inmate had a "sufficiently serious" medical need; and (2) the prison officials were aware "a substantial risk of serious harm" existed and ignored that risk by failing to take reasonable action to treat the inmate's medical need. *See id.* at 895-97; *see also Farmer*, 511 U.S. at 847 (holding that "a prison official may be liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it"); *Williams v. Mehra*, 186 F.3d 685, 691-92 (6th Cir. 1999) (en banc) (to be found liable under the Eighth Amendment, the prison official "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw that inference").

In the instant case, plaintiff allegations against Dr. Cataldi and Dr. Heyd do not state a claim of an Eighth Amendment violation. First, plaintiff has not alleged any facts even remotely suggesting that Dr. Cataldi provided inadequate medical care when, on the same day that the assault occurred, he examined plaintiff, ordered x-rays, prescribed naproxen for pain relief, and admitted plaintiff to the medical unit for two days "due to injuries to the right side of [his] head and face." (*See* Doc. 1, Complaint, p. 6). Plaintiff's allegations are simply insufficient to suggest that Cataldi was negligent, much less deliberately indifferent to plaintiff's serious medical needs,

11

in diagnosing and treating any injuries incurred by plaintiff during the assault. (*Id.*). Moreover, the complaint contains no allegations about any serious medical problems plaintiff may have experienced and sought to have treated during the four-month period before he was next seen by Dr. Heyd on September 2, 2011. In the absence of such allegations, plaintiff has not stated a valid Eighth Amendment claim.

Finally, plaintiff's only allegations regarding the medical care he received on September 2, 2011 are that Dr. Heyd ordered another x-ray of plaintiff's head and face to determine if plaintiff had suffered any "head trauma" and prescribed Tagertol for plaintiff to take until February 5, 2012 for headaches. Although plaintiff avers that Tagertol is a seizure medication and that he does not suffer from seizures, the allegation is insufficient to trigger concerns that Dr. Heyd was aware of and ignored a substantial risk of serious harm to plaintiff's health or safety when prescribing the medication to treat plaintiff's headaches. Plaintiff has not alleged that Dr. Heyd knowingly provided him with the wrong medication or that plaintiff even suffered any adverse side effects from the medication that was prescribed. *Cf. Hall v. Nurse V.*, No. 1:09cv381, 2009 WL 2243781, at *2 (S.D. Ohio July 23, 2009) (Dlott, J.) (dismissing complaint at the screening stage). At most, plaintiff's allegations may give rise to a claim of negligence on the part of Dr. Heyd in prescribing a seizure medication to treat plaintiff's headaches. However, the facts alleged by plaintiff do not amount to an Eighth Amendment violation. *Cf. Williams*, 186 F.3d at 692-93 (holding that to establish a case of "deliberate indifference" for prescribing a medication to a suicidal prisoner in pill form, the plaintiff had to show that the doctors "actually knew that dispensing [the] tablets in a pill line constituted an excessive risk to [the prisoner's] health or safety"); *see also Hall, supra*, 2009 WL 2243781, at *2 (and cases cited therein)

(holding that allegations that a prisoner experienced unanticipated side effects from a prescribed medication, without more, do not give rise to an Eighth Amendment violation for deliberate indifference to serious medical needs).

Therefore, plaintiff's claims against Dr. Cataldi and Dr. Heyd are subject to dismissal on the ground that plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

### 3. Miscellaneous Prison Conditions

Third, it appears from the face of the complaint that plaintiff is complaining about various conditions of confinement at LeCI. Specifically, he challenges the failure of prison officials to provide him with a wash rag and towel when he was admitted to the medical unit on April 15, 2011 and thereafter confined in the "hole." (*See* Doc. 1, Complaint, pp. 6-7). Plaintiff alleges that he was unable to shower without those items and that although he continually complained to correctional officers about his inability to shower without a wash rag and towel and even went on a hunger strike on April 22, 2011 in an effort to have his complaints heard, he was not provided with the requested items until April 26, 2011. (*See id.*). Plaintiff also claims in passing that correctional officers, in violation of prison rules, created a "health hazard" because they did not begin to monitor his hunger strike until April 23 or 24, 2011. (*Id.*). Finally, plaintiff conclusorily complains about the improper storage of his "commissary" items, which he claims he had to send "home due to roaches and rodents." (*Id.*, p. 5). Plaintiff's allegations are insufficient to state an actionable federal constitutional claim against any of the named defendants.

The Eighth Amendment prohibits conduct by prison officials that deprives inmates of

13

the "minimal civilized measure of life's necessities." *Richmond v. Settles*, 450 F. App'x 448,

455 (6th Cir. 2011) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). "The Eighth

Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation'

or 'other conditions intolerable for prison confinement.'" *Id.* (quoting *Rhodes*, 452 U.S. at 348).

In order to state a colorable claim of unconstitutional conditions of confinement, plaintiff must

alleged facts showing that (1) he "has been subjected to specific deprivations that are so serious

that they deny him minimal civilized measure of life's necessities"; and (2) prison officials

"acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Id.* (internal

citation and quotation omitted).

As a threshold matter, plaintiff's allegations that he was not provided with a wash rag

and towel for an eleven-day period, that his "commissary" items were stored in an area of the

prison where there were roaches and rodents, and that his hunger strike was not noticed until a

day or two after he began the strike, do not trigger any constitutional concerns about the denial

of the minimal civilized measure of life's necessities. Plaintiff does not allege that prison

officials refused to let him take showers during the eleven days that he lacked a wash rag and

towel. Even assuming that they had, the minimal time that plaintiff went without taking a

shower does not rise to the level of a deprivation of an essential sanitation need. *Cf. id.* at 455

("deprivation of a shower and other personal items for a brief span of time . . ., i.e., six days is

not actionable conduct") (internal citation and quotation omitted); *Hamilton v. Kalamazoo Cnty.

Sheriff*, No. 1:13cv14, 2013 WL 772820, at *2 (W.D. Mich. Feb. 28, 2013) (and cases cited

therein) ("Allegatons of temporary inconveniences do not demonstrate that the conditions fell

beneath the minimal civilized measure of life's necessities as measured by a contemporary

14

standard of decency."); *see also Griffin v. Southern Health Partners, Inc.,* No. 1:12CV-P174-M, 2013 WL 530841, at *9 (W.D. Ky. Feb. 11, 2013) (and cases cited therein). In the absence of any allegations that plaintiff was injured or otherwise deprived of any identifiable human need in combination with his conditions of confinement, plaintiff has not stated a claim of constitutional dimension. *Cf. Richmond*, 450 F. App'x at 455 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

In any event, plaintiff has not alleged facts showing that any of the named defendants knew about or otherwise participated in the complained-of conditions. Plaintiff has identified only one defendant in the portion of the complaint challenging the conditions of his confinement. Specifically, he has alleged that defendant Leanford provided him with a wash cloth and towel when she was contacted on April 26, 2011 by a nurse and informed that those items were all that plaintiff was requesting to end his hunger strike. Rather than establishing liability, the allegation suggests that Leanford did not act with deliberate indifference in violation of the Eighth Amendment, but actually took reasonable measures to abate the problem as soon as she was made aware of it.

To the extent that plaintiff seeks to bring claims against defendants Brunsman, Meyers, Harris, Swisher, Mohr or any other supervisory prison official, plaintiff has not stated an actionable claim for relief under § 1983. It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.,* __ F. App'x __, No. 11-6104, 2012 WL 3871886, at *2 (6th Cir. Sept. 7, 2012) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow

15

personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee,* 697 F.2d 121, 128 (6th Cir. 1982), and *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)). In the instant case, plaintiff has made no such allegations against any of the supervisory prison officials named as defendants in the complaint.

Therefore, plaintiff's claims challenging the miscellaneous conditions of confinement at LeCI are subject to dismissal with prejudice because plaintiff has not stated an actionable Eighth Amendment claim against any of the named defendants.

### 4. Failure To Protect

Plaintiff has not asserted a claim or otherwise alleged in the complaint that any of the defendants engaged in conduct amounting to a failure to protect him from the assault that was committed by an unknown inmate on April 15, 2011. However, construing the complaint liberally, it appears that plaintiff is raising a failure-to-protect claim to the extent he has alleged that all of the named defendants knew he had a "local separation from Inmate Gurty," which "came about in 1991 or 1992" when Gurty raped plaintiff at another prison, and yet allowed the two inmates to "share the same hallways" and participate in the same medical and recreational programs at LeCI. (*See* Doc. 1, Complaint, pp. 8-9).

Corrections officials have a duty "to protect prisoners from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citation and quotation omitted). "[N]ot . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, prison officials may be held liable under the Eighth Amendment for failing to ensure an inmate's

16

safety only if shown that (1) the inmate "was incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison officials acted with deliberate indifference to the inmate's safety or, in other words, knew the inmate "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *See id.* at 834, 847.  A prison official may be found to be deliberately indifferent to inmate safety if he is aware that a prisoner is vulnerable to sexual assault and fails to protect him. *Bishop v. Hackel*, 636 F.3d 757, 767-68 (6th Cir. 2011) (and cases cited therein).  Moreover, the Eighth Amendment extends to provide protection even in cases where injury has not yet occurred. *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993) (citing with approval *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980), which stated that "a prisoner need not wait until he is actually assaulted before obtaining relief").

In this case, however, it is clear from the face of the complaint that plaintiff has not exhausted the prison grievance procedure with respect to any claim he may have against the defendants based on their alleged failure to enforce a "local separation" from inmate Gurty. Plaintiff states in the complaint that he did not present the facts relating to his complaint in the state grievance procedure that is available at LeCI.  (Doc. 1, Complaint, p. 3).  He contends that he "only needed to appeal the [RIB] decision." (*Id.*).  However, the RIB decision pertained to the incident that occurred on April 15, 2011, which involved another inmate and not Gurty.

Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1995 (PLRA), a prisoner confined in any jail, prison or other correctional facility may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 or any other federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion under the PLRA is mandatory and unexhausted claims cannot be brought in federal court. *Jones*

17

*v. Bock,* 549 U.S. 199, 211 (2007); *Woodford v. Ngo,* 548 U.S. 81, 85 (2006). Prisoners must exhaust the prison grievance procedure "even where the relief sought—monetary damages—cannot be granted by the administrative process." *Woodford,* 548 U.S. at 85 (citing *Booth v. Churner,* 532 U.S. 731, 734 (2001)).

In *Jones,* the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216 (overruling the Sixth Circuit precedent to the contrary). Although the *Jones* Court focused on the pleading standard for exhaustion under 42 U.S.C. § 1997e, the Court also provided some guidance to lower federal courts in screening prisoner complaints under 28 U.S.C. § 1915A. Specifically, in addressing the PLRA's authorization of the "early dismissal" of complaints that fail to state a claim upon which relief may be granted, the *Jones* Court indicated that although exhaustion is an affirmative defense rather than a pleading requirement, prisoner complaints may nevertheless be subject to *sua sponte* dismissal for failure to state a claim when it is clear from the face of the complaint that the plaintiff failed to exhaust administrative remedies. The Court reasoned in pertinent part:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, *see* Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim *depends on whether the allegations in the complaint suffice to establish that ground,* not on the nature of the ground in the abstract. *See Leveto v. Lapina,* 258 F.3d 156, 161 (C.A.3 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face" (internal quotation marks omitted)). *See also Lopez-Gonzalez v. Municipality of Comerio,* 404 F.3d 548, 551 (C.A.1 2005) (dismissing a complaint barred by the statute of limitations under Rule 12(b)(6)); *Pani v. Empire Blue*

18

*Cross Blue Shield,* 152 F.3d 67, 74-75 (C.A.2 1998) (dismissing a complaint barred by official immunity under Rule 12(b)(6)). *See also* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357, pp. 708-710, 721-729 (3d ed.2004).

*Id.* at 215 (emphasis added).

Therefore, although exhaustion of administrative remedies need not be pled specifically in the complaint, where it is apparent from the face of the complaint that an inmate has failed to exhaust the prison grievance procedure, *sua sponte* dismissal for failure to state a claim upon which relief may be granted is appropriate on initial review of the complaint. *See, e.g., Gergely v. Warren Corr. Inst.,* No. 1:09cv757, 2009 WL 4597943, at *2-4 (S.D. Ohio Dec. 3, 2009) (Weber, J.) (*sua sponte* dismissing complaint on screening where inmate admitted in complaint that he failed to utilize prison grievance procedure); *Brown v. Lebanon Corr. Inst.,* No. 1:09cv513, 2009 WL 2913930, at *3 (S.D. Ohio Sept. 9, 2009) (Dlott, J.) (same); *accord Spaulding v. Oakland Cnty. Jail Med. Staff,* No. 4:07cv12727, 2007 WL 2336216, at *3 (E.D. Mich. Aug. 15, 2007) (applying *Jones* and dismissing complaint on initial screening for failure to exhaust because it was clear from the face of the complaint that the prisoner had not exhausted his administrative remedies prior to filing suit); *Ghosh v. McClure*, No. H-05-4122, 2007 WL 400648, at *6 n.3 (S.D. Tex. Jan. 31, 2007) ("Nothing in the Supreme Court's decision in *Jones* precludes a reviewing court from raising the issue of exhaustion *sua sponte* or dismissing the complaint without service on the defendants where the pleadings and the record confirm that a prisoner has violated 42 U.S.C. § 1997e(a) by failing to exhaust his remedies before filing suit."). *See also Tanner v. Fed. Bureau of Prisons,* 475 F. Supp.2d 103, 105 (D.D.C. 2007); *Leary v. A.R.U.S. Conerly,* No. 06-15424-BC, 2007 WL 1218952, at *4 (E.D. Mich. Apr. 25, 2007); *Funk v. Washburn,* No. 2:07-cv-318-FtM-29DNF, 2007 WL 1747384, at *1 (M.D. Fla. June 18, 2007).

19

Plaintiff's complaint conclusively shows that his claim is barred by the PLRA's exhaustion requirement as the statute has been interpreted by the Supreme Court. By his own admission in the complaint, plaintiff failed to exhaust his administrative remedies in accordance with the prison grievance procedure provided by Ohio law. *See* Ohio Admin. Code §§ 5120-9-31(K)(1), (2), (3). The exhaustion requirement applies to claims alleging a failure to protect prisoners from inmate assaults. *See, e.g., Arflack v. Cnty. of Henderson, Kentucky*, 412 F. App'x 829 (6th Cir.), *cert. denied*, 131 S.Ct. 3034 (2011); *Chasteen v. Jackson*, No. 1:09cv413, 2012 WL 1564493 (S.D. Ohio May 3, 2012) (Beckwith, J.). To the extent plaintiff may argue that the grievance process is inadequate because it does not provide for monetary relief, the Supreme Court made it clear in *Woodford*, 548 U.S. at 85, that exhaustion of administrative remedies is still required "even where the relief sought," such as "monetary damages," is unavailable to the prisoner.

Accordingly, in sum, the undersigned concludes that because the affirmative exhaustion defense appears on the face of the complaint and suffices to establish the existence of the defense, *see Jones*, 549 U.S. at 215, any Eighth Amendment claim by plaintiff based on the defendants' alleged failure to adequately protect him from assault by inmate Gurty is subject to *sua sponte* dismissal for failure to state a claim upon which relief may be granted at this time. *Cf. Gergely, supra*, 2009 WL 4597943, at *2-4. The dismissal of the claim should be without prejudice to re-filing after plaintiff has exhausted the prison grievance process.

### IT IS THEREFORE RECOMMENDED THAT:

1. The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), except that any claim by plaintiff that defendants violated his Eighth Amendment rights by failing to adequately protect him from assault by inmate Gurty should be dismissed without prejudice on

20

the ground that plaintiff has failed to exhaust the prison grievance process.

    2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 4/8/13

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PAUL WILLIAM THATCHER, JR.,       Case No. 1:13-cv-164
     Plaintiff,

                              Barrett, J.
     vs.                      Litkovitz, M.J.


WARDEN, LEBANON CORRECTIONAL
INSTITUTION, et al.,
     Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Paul William Thatcher, Jr.
R-148-049
Lebanon Corr. Inst.
PO Box 56
Lebanon, OH 45036

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____    ☑ Agent
                      ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☑ Certified Mail        ☐ Express Mail
☐ Registered            ☐ Return Receipt for Merchandise
☐ Insured Mail          ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7011 3500 0001 5345 5468

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540